2000 ME 108

**Diane S. LARGAY**

v.

**John E. LARGAY.**

Supreme Judicial Court of Maine.

Submitted on Briefs April 26, 2000.

Decided June 5, 2000.

---

Martha J. Harris, Paine, Lynch & Harris, P.A., Bangor, for plaintiff.

Phillip D. Buckley, Rudman & Winchell, LLC, Bangor, for defendant.

Before WATHEN, C.J., and CLIFFORD, SAUFLEY, ALEXANDER, and CALKINS, JJ.

ALEXANDER, J.

[¶ 1] Diane Largay appeals from the order of the Superior Court (Penobscot County, *Marden, J.*) denying her motion to amend the divorce judgment involving herself and her former husband, John Largay. In her motion, she sought an extension of the period of monthly spousal support payments beyond the date on which the parties had originally agreed that such payments would cease. On appeal she claims the court abused its discretion when it determined that (1) there did not exist a substantial change in her circumstances such that justice required an extension of the period of spousal support payments; and (2) the circumstances did not justify an award of attorney fees. We affirm.

## I. CASE HISTORY

[¶ 2] The Largays were married in June 1963. Prior to the marriage, Ms. Largay had earned a degree in nursing and was a registered nurse. In January 1964, Ms. Largay left the position she held because she was expecting the couple's first child.

During the remainder of the couple's marriage, Ms. Largay did not work outside of the home, or receive any additional training in the field of nursing.

[¶ 3] On June 16, 1982, the Largays were divorced pursuant to a judgment entered in the Superior Court (Penobscot County, *Silsby, J.*). The judgment incorporated the terms of a settlement agreement. Pursuant to the judgment, Mr. Largay was ordered to pay Ms. Largay's attorney fees which amounted to $21,000. He was also ordered to pay Ms. Largay $50 per week, per child, as child support so long as the children lived with her and to provide insurance to cover the children's medical and dental expenses.

[¶ 4] The parties agreed to an unequal distribution of the marital assets so that Mr. Largay could retain full ownership of his business. Accordingly, three of the couple's properties were granted to Ms. Largay outright, with Mr. Largay agreeing to make all mortgage payments and to pay the amounts owed on the mortgages in full if Ms. Largay decided to sell the properties at a later date. While Ms. Largay lived in one of these properties, the two remaining properties generated approximately $800 per month in rental income. The properties Ms. Largay received in 1982 were then worth approximately $325,-000.

[¶ 5] As to spousal support, the court ordered Mr. Largay to pay Ms. Largay $10,000 per year in monthly installments of $833.33. These monthly payments were to be made and were made from July 1982 through June 1993.

[¶ 6] After the 1982 divorce, Ms. Largay remained unemployed until 1988 when she accepted a position as a staff nurse at the Women's Center at St. Joseph's Hospital. She worked at the Women's Center for 16 months until the position was terminated because of a decline in the patient census. With the exception of this position, Ms. Largay has not been employed as a nurse or in any other position in the medical field since the divorce. In addition, during the years 1990 through 1995, Ms. Largay sought only one employment opportunity—a flight attendant position. The only employment Ms. Largay claims to have had since the termination of her position at the Women's Center is a part-time position in a gift shop in Florida, where she was residing at the time of her motion.

[¶ 7] In September 1992, Ms. Largay was diagnosed with optic neuritis which included some loss of vision in her right eye. At the time of that diagnosis Ms. Largay explained to the treating physician that she had also recently experienced numbness in her left thigh. She also described what the doctor believed to be stress-induced headaches that she had suffered over the 12 to 13–year period prior to the diagnosis. The 1992 diagnosis signalled an increased risk that Ms. Largay would eventually be diagnosed with multiple sclerosis (MS). Such a diagnosis was made in 1995. In addition to MS, Ms. Largay also claims to suffer from osteoporosis, pernicious anemia, arthritis, and fibromyalgia.

[¶ 8] In 1989, Ms. Largay had filed a motion to alter the divorce decree to increase child support and spousal support and award her attorney fees. The matter was litigated with an order issuing in April of 1990 which: (i) changed child support to $200 per week for the one remaining minor child; (ii) awarded Ms. Largay $1,000 toward her attorney fees; and (iii) denied the request to increase spousal support.

[¶ 9] The motion to amend at issue here was filed in June 1993 at the time the spousal support payments were to terminate under the original divorce decree. The motion sought to continue the spousal support payments and award attorney fees. The motion was extensively litigated over a period of five years with repeated continuances and delays and extensive bickering over discovery and procedural issues which collectively defy any notion of good practice or common sense.

[¶ 10] The hearing, which had commenced in 1995, was concluded in April of

1998. Because the parties wanted to file post-hearing briefs and obtain a hearing transcript, the matter was not submitted for decision until December 1998. The motion to amend and Ms. Largay's request for attorney fees was denied in February 1999. This appeal followed.

## II. DISCUSSION

[¶ 11] The party seeking modification of a spousal support award granted in a divorce judgment bears the burden of establishing a substantial change in circumstances justifying a modification. *See Schultz v. Dellaire,* 678 A.2d 46, 47 (Me. 1996). We review a trial court's refusal to modify spousal support for abuse of discretion. *See Lyon v. Lyon,* 1999 ME 75, ¶ 5, 728 A.2d 1273, 1274. In reviewing the determination of the trial court, we have stated that,

> [t]he plurality of considerations involved in evaluating a motion for the modification of alimony require that we give unusual deference to the findings of the trial court.... Absent any violation of a positive rule of law, we will overturn the trial court's decision only if it results in such a plain and unmistakable injustice as to be instantly visible without argument.

*Schultz,* 678 A.2d at 47.

[¶ 12] The trial court's authority with respect to spousal support is governed by 19–A M.R.S.A. § 951 (1997).[1] The factors a court considers when determining an award of spousal support are set forth in section 951(1)(A)–(O).[2] Title 19–A, section 951(5) provides in pertinent part that "[t]he court, at any time, may alter or amend a decree for spousal support ... when it appears that justice requires it.... In making an alteration or amendment, the court shall consider the factors listed in subsection 1." Nothing in section 951 limits the court, "by full or partial agreement of the parties or otherwise, from awarding spousal support ... or from otherwise limiting or conditioning the spousal support award in any manner that the court considers just." 19–A M.R.S.A. § 951(6) (1997).

[¶ 13] "The primary purpose of alimony is to provide 'maintenance and support' for the future needs of the payee spouse." *Noyes v. Noyes,* 662 A.2d 921, 922 (Me.1995). In the present case, Ms. Largay received property worth $325,000 on which Mr. Largay was obligated to make mortgage payments plus spousal support of $833.33 a month for 11 years. Presumably the Largays believed and the court agreed that Ms. Largay would be capable of providing for herself at the conclusion of the 11–year period and that Ms. Largay would make at least a good

---

1. By operation of P.L.1999, ch. 634, 19–A M.R.S.A. § 951 has been *repealed and replaced* by 19–A M.R.S.A. § 951–A, effective August 11, 2000.

2. The factors set forth in 19–A M.R.S.A. § 951(1) are as follows:
   A. The length of the marriage;
   B. The ability of each party to pay;
   C. The age of each party;
   D. The employment history and employment potential of each party;
   E. The income history and income potential of each party;
   F. The education and training of each party;
   G. The provisions for retirement and health insurance benefits of each party;
   H. The tax consequences of the division of marital property, including the tax consequences of the sale of the marital home, if applicable;
   I. The health and disabilities of each party;
   J. The tax consequences of a spousal support award;
   K. The contributions of either party as homemaker;
   L. The contributions of either party to the education or earning potential of the other party;
   M. Economic misconduct by either party resulting in the diminution of marital property or income;
   N. The standard of living of the parties during the marriage; and
   O. Any other factors the court considers appropriate.

faith effort to use the finite period of spousal support awarded to her to achieve a state of financial independence. However, the trial court could conclude that Ms. Largay did not take reasonable steps toward gaining financial independence during the 11–year period of spousal support the court awarded to her. Instead, the record indicates she sold or gave away most of the substantial assets she received in the divorce and devoted herself to personal matters and caring for family members.

[¶ 14] Although Ms. Largay did not work outside of the home during the couple's marriage, she was only 41 years old when the couple divorced and held a degree in nursing. In spite of her capabilities, Ms. Largay did not re-enter the workforce until 1988 and then worked only briefly because the position she held was terminated. After the termination of this position, Ms. Largay made only one attempt during the next five years to gain employment. Moreover, she failed to update her education in nursing[3] or any other field.

[¶ 15] "A party seeking a modification of a spousal support award must establish that 'a change in circumstances unanticipated by the original divorce decree' justifies modification." *Lyon v. Lyon,* 1999 ME 75, ¶ 6, 728 A.2d at 1275 (quoting *Haag v. Haag,* 609 A.2d 1164, 1165 (Me. 1992)). The Largays anticipated that the finite period of time to which they agreed to spousal support would provide Ms. Largay with a sufficient amount of time and resources to put herself in a position to move forward independently. While this expectation has not been met, the trial court found that the circumstances that caused Ms. Largay's inability to move for-

ward were largely of her own making. Where time-limited alimony is provided to permit readjustment after a divorce, a party cannot expect to unilaterally achieve an extension of the alimony period by electing not to take reasonable steps to achieve the intended readjustment. The trial court did not abuse its discretion when it determined that a modification of the divorce judgment was not justified.

[¶ 16] We next turn to Ms. Largay's contention that the court abused its discretion when it denied her request for attorney fees. The determination of whether to award attorney fees, as well as what constitutes reasonable attorney fees, lies within the discretion of the trial judge. *See* 19–A M.R.S.A. § 952(3) (1998);[4] *Rosen v. Rosen,* 651 A.2d 335, 336 (Me.1994). We review a trial court's decision as to whether or not it will award attorney fees solely for an abuse of discretion. *See id.* at 336. "An award of attorney fees should 'be based on the parties' relative capacity to absorb the costs of litigation' ... *and all relevant factors that serve to create an award that is 'fair and just under the circumstances.'"* *Clum v. Graves,* 1999 ME 77, ¶ 17, 729 A.2d 900, 907 (emphasis added).

[¶ 17] Although Mr. Largay may be in a better position to absorb the cost of the litigation, the court determined that it would be unjust under the circumstances to require Mr. Largay to pay Ms. Largay's attorney fees. In support of its denial of attorney fees to Ms. Largay, the court directed the parties' attention to its findings with respect to the merits of Ms. Largay's motion and stated that it denied attorney fees for the same reasons it re-

---

3. The record indicates that Ms. Largay inquired at a college of nursing as to the courses she would be required to take to satisfactorily update her knowledge and skills within the field, but declined to enroll when she learned it would be necessary for her to take more classes than she had anticipated.

4. Section 952(3) provides in pertinent part that, "[w]hen making a final decree, the court *may* order a party to pay reasonable attorney fees." (Emphasis added.)

fused to modify the divorce judgment. The court did not abuse its discretion when it determined that awarding Ms. Largay attorney fees would be unjust under the circumstances.

The entry is:

Judgment affirmed.