2003 ME 84

**ESTATE OF Joseph RICCI.**

Supreme Judicial Court of Maine.

Argued: March 12, 2003.

Decided: July 3, 2003.

Edward S. MacColl, Esq. (orally), Thompson, Bull, Furey, Bass & MacColl, LLC, P.A., Portland, for appellant.

Dennis J. O'Donovan, Esq. (orally), McCandless, Epstein & O'Donovan, LLP, Portland, for appellee.

Panel: SAUFLEY, C.J., and RUDMAN, DANA, CALKINS, and LEVY, JJ.

CALKINS, J.

[¶ 1] Sharon Terry, personal representative of the Estate of Joseph Ricci and trustee of the Joseph Ricci Trust of 2000, appeals from the judgment entered in York County Probate Court (*Nadeau, J.*) ordering her to pay the spousal support claim of Ricci's former spouse, Cheryl Benton. Terry contends that the Probate Court erred in refusing to remove the matter as to the trust to the Superior Court; in ordering her, in her capacity as trustee, to pay the spousal support claim; in denying her request to reduce the amount of spousal support; in ordering a lump sum payment of the claim; and in granting Benton an award of attorney fees. We agree with Terry that, upon the trustee's timely removal notice, the Probate Court was required to remove any claim as to the trust to the Superior Court, and we vacate the portion of the judgment that requires Terry to pay a lump sum to Benton, or to purchase an annuity for Benton, from the assets of the Ricci Trust or Ricci Corporations. We clarify that the remaining portions of the judgment are directed only at Terry in her capacity as personal representative of the estate, and, as clarified, we affirm.

[¶ 2] Terry also appeals an advisory opinion of the York County Probate Court (*Nadeau, J.*) entered on October 25, 2002, ordering her to pay $9638.03 in additional attorney fees in the event that the judgment is affirmed on appeal. We consolidated both of the appeals for argument. We dismiss the appeal from the advisory opinion.

## I. BACKGROUND

[¶ 3] Joseph Ricci died on January 29, 2001. Terry, his wife, was appointed the personal representative of his estate. Terry was also the trustee of the Joseph Ricci Trust of 2000, which had been established a year before Ricci's death. Ricci's will provided that the assets of his estate would pour over into the trust.

[¶ 4] Benton and Ricci were divorced in 1979, and pursuant to the settlement agreement, which was incorporated in the divorce judgment, Ricci was to pay spousal support of $40,000 annually to Benton in monthly installments of $3333.33. The agreement provided that the spousal support would terminate upon Benton's death, remarriage, or cohabitation, and, upon Ricci's death, spousal support would continue as an obligation of Ricci's estate. The divorce judgment was modified in 1990 to delete the cohabitation provision, but in all other respects the spousal support order remained in effect.

[¶ 5] Relying on the divorce judgment and agreement, Benton filed a claim for spousal support against Terry as the personal representative of the Ricci Estate. Terry neither disallowed nor paid the claim. Several months later, Benton filed a petition in Probate Court to resolve the claim for spousal support against the estate.

[¶ 6] Terry replied to Benton's petition and asked the court, inter alia, to modify or reduce the spousal support payments because of the limited resources of the estate and because the payments would not be tax deductible to the estate as they had been to Ricci when he was alive. Thereafter, Benton moved to add Terry, in her capacity as trustee of the Ricci Trust, as a respondent to the petition. After hearing and over Terry's objection, the

court granted the motion. Terry, as trustee, then filed a notice of removal stating that the Ricci Trust desired to remove the matter to the Superior Court, but the Probate Court entered an order stating that the case would remain in Probate Court.[1] After unsuccessfully seeking a reconsideration of the removal issue, Terry moved to dismiss the amended petition for lack of jurisdiction over the trust. The court denied the motion.

[¶ 7] Benton and Terry were the only witnesses at the Probate Court trial which took place on July 22, 2002. Various documents, including the divorce judgment, were admitted in evidence. Thereafter, the court issued a decision containing its findings of fact and the judgment.

[¶ 8] The court stated that as of July 14, 2002, the amount of spousal support owing to Benton was $76,666.59. It determined that Benton had an investment portfolio valued at $875,000 and that because of her age and condition she was unemployable. It found that Ricci's lifestyle, income, and assets had greatly improved between the 1990 modification and his death, and that at the time of his death Ricci had a substantial income. The court noted that assets of the Ricci Trust included Golden Ark Enterprises, which owned all of the capital stock of Davric Maine Corporation and other corporations. Davric owned and operated Scarborough Downs, a harness racing facility. The court did not make any specific findings about the financial value of the estate or trust except that Ricci owed in excess of $1,000,000 in tax-related debts and had "a myriad of other debts" at the time of his death. Terry testified that the Ricci Estate and the Ric-

ci Trust were jointly valued at $14,896,685. She acknowledged that the corporations had long-term value, but she testified that their liabilities exceeded assets by over $5.6 million. She testified to the short-term debt of the corporations, the cash flow problems, and the tax obligations. Terry acknowledged that the estate had received $1,050,399 in life insurance proceeds which she used to pay part of the taxes.

[¶ 9] Based on Terry's testimony, the court found that Terry had set aside sufficient funds to pay the accrued spousal support arrearage. Terry testified that she could pay the ongoing spousal support to Benton on a monthly basis but could not pay an accelerated lump sum. The court stated that Terry "has failed to perform an act required to be performed pursuant to a prior court order and that it is and has been within her power to so perform that act.".

[¶ 10] The court held that as of July 14, 2002, the estate owed spousal support payments to Benton of $76,666.59, to which the court applied the statutory interest rate to arrive at a total of $84,927.90. The court denied Terry's request to reduce the amount of spousal support, holding that there had been no substantial change in circumstances to warrant a modification. Benton had also requested that future spousal support payments be reduced to present value and that she be paid a lump sum of that present value. The court found the present value of future support to be $496,962.16.

[¶ 11] The court noted that Ricci's will contained a provision directing the trustee to pay the Ricci Estate amounts from the

---

1. The order stated:
   It appearing that the pending claim against the estate has not been disallowed and that the Petition seeks an order compelling payment, the within proceeding is deemed a probate proceeding, not a civil proceeding, and is not subject to transfer under M.R. Prob. 71A. Therefore, the within proceeding shall remain in this Court.

trust for any debts of the estate and that a provision in the Ricci Trust also directed the trustee to pay any debts of the estate. The court stated that it was satisfied that Terry, in her capacity as trustee, could be required to pay the estate's obligations to Benton.

[¶ 12] The court ordered Terry to pay Benton $76,666.59 within fourteen days and the balance of the $84,927.90 within thirty days. The court further ordered Terry to pay Benton $3333.33 per month starting August 15, 2002, and to pay Benton $21,748.25 for the attorney fee expenses that she had incurred through July 1, 2002. Paragraph four of the order reads:

> On or before August 1, 2003, the Respondent shall pay to the Petitioner, from the Trust/Ricci Corporation assets, if necessary, a lump sum payment in the amount of $496,962.16, less all spousal support payments made [to that time], in full and final settlement of the Petitioner's alimony/spousal support claim. Alternatively, the Respondent may at any time prior to August 31, 2002 purchase an annuity in favor of the Petitioner, guaranteeing timely monthly payments of all alimony sums due according to the terms of the Petitioner's divorce judgment. . . .

[¶ 13] Benton subsequently filed a request for additional attorney fees. On behalf of the estate and the trust, Terry appealed the judgment.[2] While this appeal was pending, the Probate Court held a hearing on Benton's subsequent attorney fee request. The court stated that it was uncertain whether it had the power to issue an award of attorney fees while an appeal was pending. Because of that uncertainty the court issued what it termed

an "advisory opinion" in which it held that Benton had incurred an additional $9638.03 in attorney fees. The court stated that once the appeal was resolved, if resolved favorably to Benton, Terry should pay Benton the additional sum of $9638.03. Terry noticed an appeal from the "advisory opinion," and we consolidated the two appeals.

## II. REMOVAL

■ [¶ 14] After the court granted Benton's motion to amend her petition by adding Terry, in her trustee capacity, as a respondent, Terry filed a notice of removal pursuant to M.R. Prob. P. 71A. The removal of a proceeding from the Probate Court to the Superior Court is a ministerial act accomplished by the register upon the receipt of a notice of removal and payment of the entry fees by any party. M.R. Prob. P. 71A(b). For reasons that are not clear from this record, instead of the register forwarding a copy of the documents and docket entries of the matter to the Superior Court, the Probate Court intervened and ordered that the matter was "not subject to transfer under Me. R. Prob. R. 71A" and "shall remain in this court."

[¶ 15] The Probate Court and the Superior Court have concurrent jurisdiction over proceedings "concerning the administration and distribution of trusts." 18–A M.R.S.A. § 7–201(a) (1998). Although Benton has not filed a specific claim against the Ricci Trust, she named the trustee as a respondent in her petition. Once Terry, in her capacity as trustee, became a party to Benton's claim for spousal support, she was entitled to remove the matter to the Superior Court

2. Terry also filed, on behalf of the trust and the estate, a motion to alter or amend the judgment. Following a hearing on the motion, the court denied it for procedural reasons without reaching the merits of the motion. Terry has not appealed that denial.

because at that point in time it appeared as though Benton was seeking a distribution of the trust assets to pay her claim, and jurisdiction for such distribution lies in the Superior Court as well as the Probate Court. The choice of forum is that of the party, not the court. Although there was some question as to why Terry had been named as a respondent in her capacity as trustee in that no actual claim against the trust had been made by Benton, once the removal had been noticed it was up to the Superior Court to determine whether there was a claim against the trust and whether it had jurisdiction. Once the notice of removal was filed, the Probate Court should not have determined the issue of which court had jurisdiction. It should not have interfered in the register's duty to remove the matter.[3]

[¶ 16] Although the court erred in ordering that the matter remain in the Probate Court, we do not vacate its order and remand to effectuate the removal because we determine that no claim was made against the trust and no order is effective against the trust. The estate did not seek to remove the matter, and the court's orders as to the estate and to Terry, in her capacity as personal representative of the estate, are not affected by the trust's removal notice. The end result of this holding is that the Probate Court's orders to the Ricci Trust or to Terry, in her capacity as trustee, are vacated.

## III. AMOUNT OF THE CLAIM

[¶ 17] Terry requested a reduction in the amount of spousal support for two reasons: (1) the amount had been tax deductible to Ricci during his life, but it was not tax deductible to his estate; and (2) the relative financial circumstances of the

parties had changed since the divorce. Terry argued that, because the spousal support was deductible to Ricci, he only had to earn $40,000 to pay $40,000 to Benton, but because the amount is not tax deductible to the estate it must earn $72,727.27 annually to pay Benton $40,000. Terry also attempted to demonstrate a change in circumstances in that Benton's financial circumstances were significantly better at present than at the time the spousal support amount was set and were now sufficient to meet her needs, while the estate had substantial obligations to creditors.

[¶ 18] The Probate Court applied divorce law to the question of modification of the amount of spousal support. In so doing, the Probate Court stated that the parties "assert ... that factors otherwise typically reviewed pursuant to an alimony modification proceeding involving living litigants in a state divorce court under 19–A M.R.S.A. § 951–A are pertinent." Terry argued that the spousal support statutes in title 19–A of the Maine Revised Statutes Annotated and the corresponding case law governed Benton's claim for future spousal support, and, specifically, that the amount of the support should be modified because there had been a significant change in circumstances. Benton did not argue that title 19–A was inapplicable; she primarily argued that a modification was not warranted because there had not been a change in circumstances unanticipated by the parties. *See Largay v. Largay,* 2000 ME 108, ¶ 15, 752 A.2d 194, 198. Furthermore, Benton contended that the title 19–A statutes and case law governed her request for attorney fees. Because the court and the parties, without objection, proceeded as though title 19–A governed the

---

**3.** The Probate Court may become involved in a matter which has been removed when there is a pending motion for approval of attach-  ment, trustee process, or replevin. M.R. Prob. P. 71A(b).

issue of modification of the spousal support, we will apply title 19–A and relevant case law to this matter.[4]

[¶ 19] Furthermore, it is appropriate to apply title 19–A and the corresponding case law because the substantive law of a claim or defense should inform the Probate Court in its determination of the merits of that claim or defense. Terry's defense to Benton's claim of annual support in the amount of $40,000 was that the amount should be reduced because of changed circumstances. The Probate Court correctly applied the substantive law to Terry's dispute over the claim.

[¶ 20] The court concluded that a modification was not warranted because there had been no change in circumstances that had not been anticipated by the parties. Ricci's death was not a change in circumstances because it was accounted for in the agreement that provided that spousal support continue after his death. The tax consequences were foreseeable, as it is a long-established rule that the deductibility of alimony is personal to the payor spouse, and deductions may not be claimed by an estate, trust, or anyone else who pays the spousal support obligation. In *Estate of Jarboe v. Commissioner*, 39 T.C. 690, 1963 WL 1452 (1963), the Tax Court held that the alimony obligation paid by a deceased spouse's estate was not deductible. The Tax Court quoted from the federal regulation, 26 C.F.R. § 1.215.1(b), then in effect: "The deduction [for alimony] is allowed *only to the obligor spouse. It is not allowed to an estate, trust, corporation, or any other person who may pay the alimony obligation* of such obligor spouse." *Estate of Jarboe*, 39 T.C. at 696. The regulation quoted in the 1963 Tax Court case remains the same today and obviously pre-

dates the 1979 Ricci–Benton divorce. Therefore, the tax consequences of the payment of spousal support by the Ricci Estate are not a change in circumstances.

[¶ 21] The court further concluded that the relative financial circumstances of the parties had not changed. It found that Ricci's lifestyle, income, and assets had greatly improved from the time of the 1990 modification of the divorce judgment until his death. The court also made detailed findings about Benton's current financial situation, including her inability to be gainfully employed. It did not make specific findings of the value of the estate, but it was not asked to make such findings, and we must assume that it found facts consistent with its conclusion that the relative financial circumstances of the parties had not changed. *See Associated Builders, Inc. v. Oczkowski*, 2002 ME 115, ¶ 11, 801 A.2d 1008, 1011 (stating that in the absence of a request for findings, we assume that the court made all findings it could from the evidence necessary for its decision). Furthermore, the court had the testimony of Terry that the estate had set aside the arrearage amount of $76,666.59 in a separate account and could afford to pay the ongoing sum of $3333.33 per month.

[¶ 22] We agree that the Probate Court did not abuse its discretion in declining to modify the amount of spousal support. It was correct in its analysis that there was no change in circumstances unanticipated by Ricci and Benton. Furthermore, we cannot find that the court clearly erred in its assessment of the relative financial circumstances of the parties and its finding that their relative circumstances had not changed sufficiently to warrant a modifica-

---

4. Relevant case law regarding modification of spousal support includes *Largay*, 2000 ME 108, ¶ 15, 752 A.2d at 198; *Haag v. Haag*, 609 A.2d 1164, 1165 (Me.1992); *Williams v. Williams*, 444 A.2d 977, 980–82 (Me.1982).

tion. Therefore, we affirm the order of the Probate Court requiring Terry, in her capacity as personal representative of the estate, to pay the spousal support arrearages and interest to Benton.

## IV. LIQUIDATION OF CLAIM

[¶ 23] In paragraph four of its order, the Probate Court required Terry to pay to Benton from the "Trust/Ricci Corporation assets, if necessary, a lump sum payment in the amount of $496,962.16" less the arrearages amount actually paid. Terry objects to this order on several grounds including the lack of authority of the court over the trust and the lack of evidence to support Benton's request for a lump sum amount.

[¶ 24] The Probate Code provides that when a claim is contingent, a claimant who consents can be paid the present value of the claim. 18–A M.R.S.A. § 3–810(b)(1) (1998). The determination of present value must take any uncertainty of the claim into account. *Id.* Benton's claim for future spousal support is contingent because it is for a monthly amount payable until her death or remarriage; upon either of those events, the payment obligation ends. Benton consented to payment of the present value, and the Probate Court determined the present value of the claim.

[¶ 25] The parties have not argued in this Court or in the Probate Court whether title 19–A statutes would allow or defeat the request for a modification of the periodic spousal support into a lump sum amount. Although lump sum spousal support is allowed in 19–A M.R.S.A. § 951–A(3) (Supp.2002), the parties did not argue as to whether a change in circumstances would be required to modify any periodic payments into a lump sum. Because the court and the parties proceeded as though only 18–A M.R.S.A. § 3–810(b)(1) was relevant to the lump sum request, we conclude that Terry has failed to preserve any defense to Benton's request that she might have on the ground that Benton has not shown a change in circumstances sufficient to warrant a lump sum amount.

[¶ 26] Terry argues to us that that the court's factual determination of the present value did not take into account the contingency of Benton's remarriage. However, this was not an objection raised before the trial court. The parties had agreed, in lieu of expert testimony on present value, to allow a calculation based upon the estate tax regulations of the Internal Revenue Code. *See* 26 U.S.C.A. § 7520 (2002); 26 C.F.R. § 20.2031–7(d)(2)(iv) (2002). Benton prepared the calculation, which was admitted in evidence without objection. That calculation showed the present value as $496,962.16. Terry has not preserved any objection to the present value on the ground of failure to take the uncertainty of remarriage into account.

[¶ 27] Terry's objection at trial was that the estate could not afford to pay a lump sum of $496,962.16. When a court determines whether to accelerate a contingent claim, it should consider the ability of the estate to pay the present value as well as the desirability of bringing the claim to a conclusion. The court had expressly found that the assets of the trust, which included the Ricci Corporations, were available to pay the estate's claims. Although the Probate Court has discretion in determining whether to reduce a contingent claim to present value, the court exercised that discretion from its view that the trust and its assets were before the court for distribution. In contrast to the portions of its order regarding payment of the arrearage, interest, and attorney fees by Terry to Benton, the court expressly ordered the $496,962.16 to be paid by Terry to Benton from the Ricci Trust and Ricci Corporation assets, if such was necessary. As we stat-

ed above, the court could not exercise jurisdiction over the distribution of the trust's assets once the trustee timely noticed the removal of any claim against the Ricci Trust to the Superior Court. Because the court misapprehended its power over the trust and because its decision to order the lump sum relies upon payment of it by the trust and corporations, we conclude that it abused its discretion in ordering the lump sum payment.

## V. ATTORNEY FEES

■■■ [¶ 28] The Probate Court ordered Terry to pay $21,748.25 to Benton for the attorney fees Benton incurred, through July 1, 2002, in pursuing the claim for spousal support. Terry argues that this was error because the Probate Code provision regarding attorney fees, 18–A M.R.S.A. § 1–601 (1998), does not permit such an award and because 19–A M.R.S.A. § 952 (1998) does not authorize a probate court to award attorney fees for a spousal support claim.[5] We review whether a court has exceeded its authorization in awarding attorney fees pursuant to section 1–601 for an error of law. *Estate of McCormick*, 2001 ME 24, ¶ 18, 765 A.2d 552, 559. When a court does not exceed its authorization under section 1–601 to award fees, the decision to award fees, as well as the amount awarded, is reviewed for an abuse of discretion. *See Estate of Stowell*, 636 A.2d 440, 442 (Me.1994). We review an award of attorney fees under section 952 for abuse of discretion. *Wooldridge v. Wooldridge*, 2002 ME 34, ¶ 8, 791 A.2d 107, 109.

[¶ 29] We need not resolve the issue as to whether section 1–601 or section 952 provides the authority for the award of fees in this case. Pursuant to either statute the court did not err or exceed the limits of its discretion in ordering the payment of Benton's attorney fees from the estate.

[¶ 30] If this was a dispute between living parties over the enforcement of spousal support and whether the amount of that support should be modified, section 952 would provide authority for the award of attorney fees. We have described certain factors that a court may consider in determining whether to award attorney fees in divorce and post-divorce matters: the relative financial circumstances of the parties and which party is in a better position to bear the costs of litigation, *see Harding v. Murray*, 623 A.2d 172, 177 (Me.1993); whether the conduct of a party has contributed to the duration of litigation, *Wooldridge*, 2002 ME 34, ¶ 8, 791 A.2d at 110; *Rosen v. Rosen*, 651 A.2d 335, 337 (Me. 1994); the merits of the modification or enforcement motion, *Largay*, 2000 ME 108, ¶ 17, 752 A.2d at 198–99; and "all factors that reasonably bear on the fairness and the justness of the award," *Rosen*, 651 A.2d at 336–37.

[¶ 31] In awarding fees to Benton, the court found that Terry contributed to the litigation by withholding the undisputed arrearages and ongoing periodic support which the estate had sufficient funds to pay. It also found Benton's enforcement claim valid. These findings support an award of fees under section 952. Unlike its order for payment of the lump sum amount, the order for attorney fees did not

---

**5.** Because Terry had maintained that title 19–A was applicable to the modification issue and because Benton requested that title 19–A be applied to her attorney fee request, the Probate Court relied on title 19–A to award attorney fees. The court also cited the con-

tempt rule, M.R. Civ. P. 66(d)(3)(C), as authority to order reasonable attorney fees. However, the court, in its subsequent ruling on Benton's request for additional fees, seemed to rely on 18–A M.R.S.A. § 1–601.

rely on a finding that the trust assets were available to pay the amount, nor did the court order the attorney fees paid from the assets of the trust or corporations.

[¶ 32] Pursuant to 18–A M.R.S.A. § 1–601 an award of fees is allowed "as justice requires." The primary concern of a court in determining whether section 1–601 warrants an award of attorney fees is "whether the litigation has been beneficial to the estate, and not ... whether the litigants have the ability to pay their own attorney fees." *Estate of Voignier,* 609 A.2d 704, 708 (Me.1992). When a personal representative forced a party to litigate in order to enforce a court order, we held that an award of fees from the estate was justified. *Id.* In this case, a judgment gave Benton entitlement to spousal support. Terry did not disallow the claim of arrearages or of ongoing support; she simply refused to pay even though, as she testified, the funds for the payment had been set aside. Enforcement of this debt, which was created by an acknowledged judgment and which the estate had funds to satisfy, benefits the estate. This litigation, brought to enforce a just claim, was made necessary by Terry's recalcitrance.

[¶ 33] The court found that the amount it awarded was reasonable. Terry now argues that the amount was excessive. Nonetheless, at trial Terry did not present any facts on attorney fees to the court or object to specifics in the detailed fee request submitted by Benton's trial counsel.[6] It was not until her post-judgment motion to amend or alter the judgment that she complained that the hourly rate was too high and argued that she should not have to pay those fees related to the issue of accelerating the spousal support into a lump sum.

[¶ 34] Assuming, without deciding, that Terry has preserved the issue of the amount of fees, we do not find that the court abused its discretion. The court was in a better position than we are to assess the factors that a court must consider in deciding on the amount of fees. *See Villas By the Sea Owners Ass'n v. Garrity,* 2001 ME 93, ¶ 8, 774 A.2d 1115, 1117. It presided at the trial; it was familiar with the record; it reviewed the detailed times and charges; and it observed first-hand the quality of representation. *See Lewis v. Lewis,* 2003 ME 26, ¶ 14, 817 A.2d 867, 870. It was aware of the actions of the parties contributing to the amount of the fees. Terry has not convinced us that the court exceeded the bounds of its discretion.

[¶ 35] As with the order for the arrearages and interest, the attorney fee award runs only against Terry in her capacity as personal representative of the estate. Although Terry has not appealed from that portion of the Probate Court's judgment ordering her to pay monthly spousal sup-

---

**6.** At trial Terry objected to the two fee affidavits offered in evidence by Benton: one from her former attorney and one from her trial attorney. The court excluded as hearsay the affidavit from the former attorney, and no fees were awarded by the court based upon that affidavit. Terry also objected to the affidavits on the ground that attorney fees had not been requested in the petition to resolve the disputed claim, but, in fact, the amended petition filed several months before the hearing stated that Benton was requesting attorney fees. In his closing argument, Terry's counsel made three brief references to the amount of the fees: (1) he stated that the fee request was "big"; (2) he referred to 1993 litigation between Ricci and Benton over child issues in which Benton was awarded $1500 in attorney fees and suggested that the 1993 dispute was comparable to the present one; and (3) he indicated that his fees to the estate and trust would be a "small slice" of those requested by Benton. The Probate Court concluded that Terry "does not challenge the validity of [Benton's] attorney time entries and billing rate."

port of $3333.33, we clarify that the order is only against Terry in her capacity as personal representative of the estate.

[¶ 36] Terry also appeals from an "advisory opinion" of the Probate Court ordering her to pay Benton $9638.03 as additional attorney fees incurred after July 1, 2002. The court held a hearing on Benton's request for the additional fees after the appeal had been docketed in this Court. However, the court became concerned that it lacked jurisdiction because of the pending appeal, and therefore termed its decision and order "advisory" and "subject to the resolution" of the appeal. Although it is not entirely clear to us why the court concluded that the pending appeal deprived it of jurisdiction, we are not inclined to decide an appeal from a self-styled "advisory opinion." For that reason, we dismiss the appeal.

The entry is:

Paragraph 4 of the judgment is vacated. The portions of the judgment ordering payment of spousal support arrearages and interest, monthly spousal support and attorney fees are clarified to state that they are against Terry, in her capacity as personal representative of the estate, and as clarified, are affirmed. The appeal of the advisory opinion entered October 25, 2002, is dismissed.