2003 ME 113

**Janice E. MIELE**

v.

**Norman E. MIELE.**

Supreme Judicial Court of Maine.

Submitted on Briefs: June 26, 2003.
Decided: Sept. 15, 2003.

E. Chris L'Hommedieu, L'Hommedieu Law Office, Lewiston, for plaintiff.

Scott J. Lynch, Hornblower & Lynch, P.A., Lewiston, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

CLIFFORD, J.

[¶ 1] Norman E. Miele appeals from a divorce judgment, entered in the District Court (Rumford, *McElwee, J.*). Norman contends that the court abused its discretion by (1) awarding general spousal support to his former wife, Janice E. Miele, and (2) ordering him to pay a portion of Janice's attorney fees. We are not persuaded by Norman's contentions and affirm the judgment.

[¶ 2] Janice and Norman Miele were married on November 20, 1965. The couple separated in 2001. Both parties were employed. Janice held two jobs and, at the time of the 2002 divorce, she anticipated earning a yearly salary of approximately $24,000. In 2001, Norman earned between $22,000 and $23,000.[1]

[¶ 3] Norman sustained two work related injuries, the first of which occurred in 1985 and required a cervical fusion of his

---

1. Norman pays $403 per month for a vehicle loan, and owes several hundred dollars in credit card debt.

neck. In 1989, he settled his workers' compensation claim from that injury, and received an immediate lump-sum payment for $35,000, and an annuity of $950–$1050 per month until September 20, 2015. In July of 1997, Norman sustained another serious neck injury, causing him to miss roughly thirty-one months of work. From this second injury, Norman entered into a workers' compensation lump sum settlement agreement and received $65,000, more than $7000 of which was immediately dedicated to legal fees.[2] Norman is currently on medication for his injuries and suffers from diabetes, as well as arthritis in both hips. In 2013, Norman expects to begin receiving a monthly retirement check for $109.[3]

[¶ 4] The District Court issued an order, dated October 25, 2002, requiring Norman to pay (1) general spousal support to Janice, and (2) a portion of Janice's legal fees. The order reflected the court's concern with Norman's evasive testimony about the dispersion of the proceeds he received from the 2001 workers' compensation settlement. The court stated:

> The court notes, however, that defendant was not at all credible and was extremely evasive as to his disposition of the $57,648.24 of the $65,000.00 settlement ($7,351.76 having been allocated to legal fees and costs); and the court finds that defendant is still in possession of, or has access to, substantially more than the $7,560.00 in the Androscoggin Savings Bank check payable to him (as documented by his attorney on 7/23/02

pursuant to the court's direction at the divorce hearing). Further, the court has considered same in its alimony award hereinafter.

[¶ 5] The court's order of spousal support referenced Norman's "access to very substantial funds from the 2001 settlement." The court found that Norman "has a significant ability to pay spousal support as a factor within 19–A M.R.S.A. § 951–A(5)(B)" and therefore ordered "an award of spousal support from [Norman] to [Janice] of $450.00 per month for 13 years[.]" The court subsequently reduced the spousal support award to $375.00 per month commencing in November of 2002, and ending in 2015. The award does not terminate upon either Norman's death, or the remarriage or cohabitation of Janice, but it cannot be increased.

[¶ 6] The court also ordered Norman to pay $2500 of Janice's attorney fees within thirty days of the order. In doing so, the court again highlighted Norman's "evasive testimony as to the disposition of his 2001 workers' compensation settlement proceeds" and attributed various discovery disputes to Norman.

[¶ 7] The court issued the final divorce judgment on December 19, 2002. In it, the court decreased the amount Norman owed Janice in attorney fees to $1750.[4] Norman subsequently filed a motion for further findings of fact or to amend, to which the court responded by noting that Norman's "[n]on-marital assets and/or income may be considered in an award of spousal support, and the court simply did

2. Like the 1989 settlement, none of this settlement was designed to provide retrospective benefits for either wage or medical indemnity. The court determined the funds from this settlement to be Norman's nonmarital property, a determination that Janice does not challenge.

3. At some point, Norman also received a check for between $1800–$2000 as part of a personal injury settlement resulting from an automobile accident.

4. Janice suggested that the court reduce the award of attorney fees in exchange for an award of certain escrow accounts. The court agreed and modified the award accordingly.

so in this case."[5] The court rejected Norman's contention that the court penalized him for the nature of his testimony by ordering him to pay a portion of Janice's legal fees. The court indicated that it "simply viewed defendant's evasiveness as a significant basis to conclude that he was still in possession or control of considerably more of his most recent workers' compensation lump sum settlement than he testified to; and therefore had the ability to contribute to plaintiff's attorneys fees (from his own assets and in comparison to those of plaintiff)."

[¶ 8] This appeal followed.

## I.

[¶ 9] Norman contends that, in ordering spousal support, the court did not fully consider the factors listed in 19–A M.R.S.A. § 951–A(5) (Supp.2002). Specifically, he asserts that (1) notwithstanding his motion for further findings of fact, the District Court failed to make more specific findings with regard to the statutory factors; (2) the court improperly considered what it perceived as his failure to fully account for the proceeds from the 2001 workers' compensation settlement despite determining that those funds were nonmarital;[6] and (3) the court failed to find that Janice has "substantially less" income potential than Norman.

[¶ 10] We review a grant of spousal support for an abuse of discretion.

*Murphy v. Murphy,* 2003 ME 17, ¶ 13, 816 A.2d 814, 818. Title 19–A M.R.S.A. § 951–A(2) lists five possible types of spousal support, including general support. General support "may be awarded to provide financial assistance to a spouse with substantially less income potential than the other spouse so that both spouses can maintain a reasonable standard of living after the divorce." *Id.* § 951–A(2)(A). The primary purpose of such support is "to provide 'maintenance and support' for the future needs of the payee spouse." *Largay v. Largay,* 2000 ME 108, ¶ 13, 752 A.2d 194, 197 (internal citation and punctuation marks omitted). Section 951–A(5) sets forth numerous factors for the divorce court to consider prior to issuing an alimony award. 19–A M.R.S.A. § 951–A(5)(A)–(Q).

[¶ 11] Although the District Court listed the section 951–A factors on which it relied in awarding spousal support, Norman contends that the court failed to adequately explain how it applied those factors to the circumstances of this case. Although a court "has a duty to make findings sufficient to inform the parties of the reasoning underlying its conclusions and to provide for effective appellate review," *Bayley v. Bayley,* 602 A.2d 1152, 1153–54 (Me.1992), a court is not required to detail the rationale it uses to reach each finding of fact or conclusion of law. *Dargie v. Dargie,* 2001 ME 127, ¶ 3, 778 A.2d 353, 355 ("What [appellant] seeks

---

5. Norman also objected to the continuation of the spousal support award after Janice's remarriage or cohabitation or Norman's death. Title 19–A M.R.S.A. § 951–A(3)(D)(E) allows the court to provide for spousal support payments that continue beyond the remarriage or cohabitation of the payee spouse, or death of the payor spouse.

6. Norman contends that, because the court determined the proceeds from the 2001 settlement to be nonmarital property, it was not

permitted to consider any of his perceived economic misconduct. Specifically, Norman points to section 951–A(5)M, which allows a court to consider the "[e]conomic misconduct by either party resulting in the diminution of *marital* property or income." Factor Q, however, allows a court to consider "[a]ny other factors the court considers appropriate." *See Smith v. Smith,* 419 A.2d 1035, 1039 (Me. 1980).

... is ... the rationale used by the District Court to reach the conclusions that it reached; that he is not entitled to."). Indeed, Norman's motion for further findings did not request a more specific explanation from the court concerning its reliance on the section 951–A factors. *See Bayley,* 602 A.2d at 1154 ("[W]here a party has moved for *specific* findings of fact the divorce court is obliged to do more than recite the relevant criteria and state a conclusion.") (emphasis added). The District Court did not err, nor did it abuse its discretion, in relying on the statutory provisions.

■ [¶ 12] Norman further contends that the District Court placed undue reliance on the nature of his testimony about the 2001 workers' compensation award. Norman also contends that, because the court found that Janice's salary "is substantially the same as [Norman's] income," it was thereafter not permitted to order him to pay spousal support. In support of its decision to award spousal support to Janice, however, the court found Norman's and Janice's incomes to be substantially the same, "exclusive of [Norman's] workers' compensation benefits." The annuity from the 1989 workers' compensation settlement constitutes a substantial additional source of income to Norman. *See Melanson v. Matheson,* 1998 ME 117, ¶ 7, 711 A.2d 147, 148–49 ("In determining alimony, the court considers, *inter alia,* all available sources of income."). Considered alongside Norman's remaining assets from the 2001 settlement, the court's conclusion that Norman had "a significant ability to pay spousal support" was not clearly erroneous. *Cf. Pelletier v. Pelletier,* 597 A.2d 60, 62 (Me.1991) ("A divorce court is vested with broad powers to order ... alimony ... so long as ... the court takes into account the payor spouse's ability to pay ....."). Should the court's order become

unduly burdensome for Norman, *see Bryant v. Bryant,* 411 A.2d 391, 395 (Me. 1980) (noting alimony must be reasonable in both amount and method of payment), he would be entitled to seek a modification, *see Klopp v. Klopp,* 598 A.2d 462, 463 (Me.1991) ("For a modification of a divorce judgment, the moving party must show a substantial change of circumstances since the divorce.").

[¶ 13] Given Norman's various sources of income and his additional assets, the court's spousal support award was not an abuse of discretion. *See Melanson,* 1998 ME 117, ¶ 6, 711 A.2d at 148.

## II.

■ [¶ 14] Norman also appeals the court's determination that he is required to pay a portion of Janice's attorney fees. We review the grant of attorney fees for an abuse of discretion. *Largay,* 2000 ME 108, ¶ 16, 752 A.2d at 198.

■ [¶ 15] "When making a final decree, the court may order a party to pay reasonable attorney's fees." 19–A M.R.S.A. § 952(3) (1998). Such an award is "based on the parties' relative capacity to absorb the costs of litigation[,]" *Smith v. Smith,* 419 A.2d 1035, 1040 (Me.1980), as well as "all relevant factors that serve to create an award that is 'fair and just under the circumstances,'" *Clum v. Graves,* 1999 ME 77, ¶ 17, 729 A.2d 900, 907 (quoting *Rosen v. Rosen,* 651 A.2d 335, 336 (Me. 1994)).

[¶ 16] In this case, the court acted within its discretion by ordering Norman to pay $1750 of Janice's attorney fees. The court awarded attorney fees because it found Norman had the ability to pay, i.e., that he is better able to absorb the costs of litigation, considering the monies he received from the 2001 workers' compensation settlement, and because it attributed discov-

ery disputes to Norman. *Gray v. Gray,* 609 A.2d 694, 699 (Me.1992) ("Moreover, [husband's] conduct during the litigation, particularly his failure to cooperate in discovery, increased the legal costs incurred by [wife].").

[¶ 17] Once a court has determined that a party is entitled to an award of attorney fees, it must thereafter evaluate an appropriate sum to award. Levy, *Maine Family Law* § 9.2 at 338 (2000 ed.). The party seeking counsel fees must, "[a]t the very least, [introduce] an affidavit attesting to the plaintiff's fee agreement with [the party's] lawyer, counsel's customary hourly rate, and other such basic facts, [as] necessary to allow the court to make a valid calculation as to what amount constituted 'reasonable counsel fees' ...." *Hebert v. Hebert,* 475 A.2d 422, 426 (Me.1984). The trial court must thereafter "provide a concise but clear explanation of its reasons for grant or denial of the fee award." *Id.* at 427 n. 5.

[¶ 18] Janice submitted an affidavit of attorney fees, which clearly reflected (1) Janice's fee arrangement with counsel; (2) counsel's customary hourly rate; and (3) periodic billing statements, which satisfies the *Hebert* court's request for other facts necessary to allow a court to make a reasonable calculation of reasonable counsel fees. Moreover, the court provided a "concise but clear" explanation for its actions, and the award was well within the court's discretion.

The entry is:

Judgment affirmed.