2005 ME 16

**VERIZON NEW ENGLAND, INC.**

v.

**PUBLIC UTILITIES COMMISSION et al.**

Supreme Judicial Court of Maine.

Argued: June 9, 2004.

Decided: Jan. 26, 2005.

Catherine R. Connors, Esq. (orally), William D. Hewitt, Esq., Pierce Atwood,

Portland, (for Verizon), Donald W. Boecke, Esq., Verizon New England, Boston, MA, for appellants.

Trina Bragdon, Esq. (orally), Joanne B. Steneck, Esq., Public Utilities Commission, William C. Black, Esq., Wayne R. Jortner, Esq. (orally), Eric J. Bryant, Esq., Office of Public Advocate, Augusta, for appellees.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, CALKINS, and LEVY, JJ.

SAUFLEY, C.J.

[¶ 1] Verizon New England, Inc., appeals from a Public Utilities Commission order denying Verizon's petition to amend an order that, inter alia, prohibits Verizon from marketing its in-state toll services when a customer calls to establish or change local service. Verizon contends that the Commission erred (1) when it decided not to lift the marketing restriction and (2) when it failed to consider whether the restriction violates the company's free speech rights afforded by the First Amendment. Because the Commission failed to reach the question of whether the marketing restriction violates Verizon's constitutionally protected commercial speech rights, we remand the matter to the Commission for further findings pursuant to *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557, 566, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980).

## I. BACKGROUND

[¶ 2] Verizon provides three general types of telephone services to Maine customers: local service, in-state toll service, and interstate toll service. The Public Utilities Commission is responsible for regulating the local and in-state toll services provided by Verizon and its competitors.[1] Before 1997, if a customer wanted to purchase in-state toll service from a service provider other than Verizon, the customer was required to dial an access code before dialing the telephone number. In September 1997, however, the Intra-LATA[2] Presubscription (ILP) was established to allow customers to choose in-state toll providers other than Verizon without having to dial an access code before each call.[3]

[¶ 3] In anticipation of the introduction of the ILP, Verizon[4] entered into a stipulation with the Commission that, among other things, placed a restriction on its marketing of in-state toll services. The restriction provided that no in-state toll marketing activities would occur during customer initiated calls made to Verizon for the purpose of establishing or changing local service. In that stipulation, Verizon expressly reserved the "right to petition the Commission in the future for an amendment to any aspect of the Stipulation based upon the passage of time or other change in circumstances." The Commission issued an order adopting the stipulation in May 1997.

[¶ 4] More than five years later, in December 2002, Verizon filed a petition to

---

1. Interstate toll service is regulated by the Federal Communications Commission.

2. In-state toll service is synonymous with the term "intraLATA toll service" because Maine is comprised of a single LATA (Local Access Transport Area) with boundaries coterminous with state boundaries.

3. New England Tel. & Tel. Co. d/b/a Nynex Implementation Plan for the Introduction of ILP, No. 97–204 (Pub. Utils. Comm'n order May 30, 1997).

4. At the time of the stipulation, the carrier was New England Telephone & Telegraph Co. d/b/a NYNEX.

amend the 1997 order. Its petition acknowledged that when it entered into the stipulation in 1997, there was concern that Verizon's past market share in both the local and in-state toll services could be used unfairly to influence the customers' selection of an in-state toll service provider. Verizon argued, however, that the marketing restriction is no longer necessary because the in-state toll market is now fully open and competitive. In support of its position, Verizon asserted that more than one-half of its business customers and one-third of its residential customers presubscribe to other carriers for in-state service; it no longer has a competitive advantage as the incumbent provider of local service because customers no longer have to contact Verizon to establish local service or change service; and there are no barriers preventing competitors from providing local, as well as in-state, toll services to customers. The Commission held a case conference the following month, during which Verizon asserted that its First Amendment rights were at issue.

[¶ 5] In September 2003, Verizon sent a letter addressed to the administrative director that stated, in part,

> when Verizon entered into the ILP Stipulation, it agreed to temporarily refrain from exercising certain of its First Amendment rights. Verizon Maine's voluntary restriction on telemarketing on certain inbound customer calls was an effort to aid the Commission in promoting greater awareness among customers of their newly granted opportunity to choose a presubscribed instate toll carrier. In this proceeding, however, Verizon has conclusively shown that both the toll market in general, and individual toll customers in particular, no longer need the extraordinary regulatory measure of prior restraint put in place by the Stipulation .... The extraordinary abridgement of Verizon

Maine's free speech with respect to inbound telemarketing is plainly no longer required to protect toll competition.

The Public Advocate responded to the Commission in writing, stating that Verizon's communication was procedurally improper because Verizon did not have prior approval to submit the letter. There is, however, no indication in the record that the Commission notified Verizon of any procedural defect.

[¶ 6] On October 3, 2003, the Commission denied Verizon's request to amend the 1997 order. The Commission found that Verizon failed to provide evidence to support its assertion that it had lost a significant share of the in-state toll market. Although the Commission recognized that the local exchange market has evolved since 1997, it also found that Verizon retained approximately a ninety percent share of the local exchange market. Based on these findings, the Commission concluded that it was premature to lift the restriction. It appears that the Commission recognized that the passage of five years and the change in marketing during that time warranted a review of the need for the restriction. The Commission did not articulate a First Amendment analysis in maintaining the restriction on Verizon's commercial speech.

[¶ 7] On October 23, 2003, Verizon filed a petition for reconsideration, arguing that the Commission misperceived the nature of its request and the rationale behind the 1997 stipulation and resulting order. Verizon also asserted that "[n]o valid regulatory interest is served by continuing a restriction that infringes on [its] constitutional right to provide truthful commercial information to its customers." The Commission denied Verizon's petition to reconsider, concluding that Verizon did

not present any reason to reverse its original decision. This appeal followed.

## II. DISCUSSION

### A. Burdens of Proof

[¶ 8] The 1997 order differs from a typical judgment in that, much like injunctive orders, see *Town of Shapleigh v. Shikles*, 427 A.2d 460, 466 (Me.1981), or divorce judgments affecting parental rights and responsibilities, see *Miele v. Miele*, 2003 ME 113, ¶ 12, 832 A.2d 760, 764, when the Commission enters an order that will affect a party's conduct over time, it is authorized to entertain future modification. *See* 35–A M.R.S.A. § 1321 (Pamph.2004); see generally 2 Field, McKusick & Wroth, *Maine Civil Practice* § 80.4 at 278–79 (2d ed. 1970 & Supp.1981). Thus, the order in the present case was to remain in effect until the Commission decided there had been a sufficient "passage of time or other change in circumstances." *See Miele*, 2003 ME 113, ¶ 12, 832 A.2d at 764.

[¶ 9] The parties in the present case dispute the relevant burdens of proof and persuasion in this type of proceeding before the Commission. Although we have not considered this question previously in precisely this context, we conclude that the party challenging the status quo bears the burden of demonstrating by a preponderance of the evidence that the circumstances have changed or that the other agreed upon prerequisites to a reconsideration of the order—here, the passage of time, substantial in this regulatory environment—have come to pass before the agency is required to address the issues raised by the petition. *See Largay v. Largay*, 2000 ME 108, ¶ 11, 752 A.2d 194, 197 (holding that the party seeking to modify "a spousal support award granted in a divorce judgment bears the burden of establishing a substantial change in circum-

stances justifying a modification"). Placing the burden on the party seeking to alter or set aside an order that guides multiple parties' conduct has the benefit of assuring greater stability, less frequent disruptions of orders that are in place, and reduction of the costs of disputes and litigation.

[¶ 10] Thus, in the absence of other action by the Commission or the Legislature, the Commission's decision remains in effect until two determinations have been made. First, Verizon, as the party seeking to change the order based on the stipulation, must demonstrate that the condition precedent for the order's reconsideration has occurred, i.e., that there has been a "passage of time or other change in circumstances." Second, if Verizon meets that burden, Verizon has the burden of persuading the Commission that the current order must be altered or amended. Accordingly, if the Commission concludes that it is appropriate to review the order at this time, it must go on to consider Verizon's petition to alter the original order and must determine, pursuant to applicable law, whether the challenged restriction should remain in place.

### B. Passage of Time or Other Change in Circumstances

[¶ 11] The Commission has broad authority to rescind, alter, or amend any order it has made. 35–A M.R.S.A. § 1321. When a party files a petition to amend, the Commission must first examine the petition to determine whether it presents sufficient legal or factual issues to warrant a de novo review of its initial order. *See id.* Here, in the stipulation incorporated in the order, the parties agreed that Verizon would have the right to petition for an amendment upon "the passage of time or other change in circumstances." Because the order adopting the stipulation re-

mained effective, and no law or Commission rule had supplanted the order at the time of Verizon's request, Verizon bore the burden of demonstrating that a meaningful passage of time or other substantial change in circumstances had come to pass.

[¶ 12] Although the parties differ in their interpretation of the Commission's conclusions, we interpret the Commission's order as determining that a change in circumstances and the passage of time warranted review of the restrictive conditions. We also conclude that the finding of a change in circumstances and the passage of time was adequately supported in the record. Five years had passed between the adoption of the original order incorporating the stipulation and the filing of Verizon's petition, during which time the market had, in fact, changed. The Commission concluded that "[a]t the time the Stipulation was approved the TelAct was a little over one year old, and local competition was almost non-existent.... Today, the local exchange market has evolved somewhat, in that there now are approximately 100 companies certified to provide[ ] competitive local service in Maine." Accordingly, we read the Commission's order as finding, upon sufficient evidence, that Verizon met its initial burden by sufficiently demonstrating a change of circumstances warranting a review of the Commission's order.

## C. The First Amendment

[¶ 13] Verizon next argues that the Commission, in determining that the restriction should remain in place, failed to consider whether the marketing restriction violates its commercial speech rights. The Commission argues that it was not required to address Verizon's First Amendment concerns because the company (1) permanently waived its First Amendment rights by entering into the 1997 stipulation and (2)

failed to properly raise and preserve the issue on appeal.

### 1. Waiver of First Amendment Rights

■■■■ [¶ 14] It is well settled that a party may waive its constitutional rights, *see, e.g., D.H. Overmyer Co. v. Frick Co.,* 405 U.S. 174, 185, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972); however, that waiver must be clear and unequivocal, *see Jacques v. Am. Home Assurance Co.,* 609 A.2d 719, 721 (Me.1992) (holding that a party did not relinquish its due process rights to notice and the opportunity to be heard because there was no evidence of a clear and unequivocal waiver); *see also Fuentes v. Shevin,* 407 U.S. 67, 95, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (holding that "a waiver of constitutional rights in any context must, at the very *least,* be clear"). Although Verizon's stipulation contained no express waiver, by agreeing to the restriction, Verizon did clearly relinquish its right to bring a First Amendment challenge during the period that the order was in effect. Verizon did not, however, *permanently* waive its First Amendment rights by voluntarily agreeing to restrict its speech in the 1997 stipulation. The clear language of the stipulation reserved the parties' "right to petition the Commission in the future for an amendment to any aspect of the Stipulation based upon the passage of time or other change in circumstances." Once the Commission concluded that the change in circumstances warranted a review of the order, Verizon's initial waiver of its First Amendment rights was no longer in effect.

### 2. Preservation of First Amendment Issue

■■■■ [¶ 15] "An issue is raised and preserved if there was a 'sufficient basis in the record to alert the court and any opposing party to the existence of that is-

sue.'" *St. Francis De Sales Fed. Credit Union v. Sun Ins. Co. of N.Y.*, 2002 ME 127, ¶ 22, 818 A.2d 995, 1002 (quoting *Chasse v. Mazerolle*, 580 A.2d 155, 156 (Me.1990)). Although the Commission asserts, on appeal, that the letter submitted by Verizon in September 2003 was procedurally improper, there is nothing in the record to indicate that the Commission notified Verizon that the First Amendment issue was not properly raised. Even if the letter was not part of the official record, its contents presented the constitutional argument to the Commission. Because the contents of the letter were sufficient to make the Commission aware of the looming free speech issue and because Verizon also raised its First Amendment concerns at the only case conference held in the matter, Verizon adequately raised and preserved the issue on appeal. *See St. Francis De Sales Fed. Credit Union*, 2002 ME 127, ¶ 22, 818 A.2d at 1002; *Chasse*, 580 A.2d at 156.

### 3. Restriction on Commercial Speech

■ [¶ 16] Although Verizon has the burden of proving that a change of circumstances justified lifting the marketing restriction, the Commission has the responsibility of determining that the marketing restriction does not impermissibly abridge Verizon's free speech rights. *Edenfield v. Fane*, 507 U.S. 761, 770, 113 S.Ct. 1792, 123 L.Ed.2d 543 (1993) (stating that "[i]t is well established that [t]he party seeking to uphold a restriction on commercial speech carries the burden of justifying it") (quotation marks omitted).

[¶ 17] In *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, the Supreme Court summarized the four-part analysis used to determine the constitutionality of governmental restrictions on commercial speech:

> At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

477 U.S. at 566, 106 S.Ct. 2686. Both parties acknowledged at oral argument that the Commission did not articulate a *Central Hudson* analysis. Although the Commission extensively reviewed the current market status, the Commission's decision does not permit us to conduct a meaningful review of the First Amendment issue on appeal. Accordingly, we decline to address whether the continued restriction on the plaintiff's commercial and noncommercial speech was constitutional because "neither the legal issues nor the factual questions" were separately addressed by the Commission. *Bd. of Trustees of the State Univ. of N.Y. v. Fox*, 492 U.S. 469, 485, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989). We remand this matter to the Commission to allow it to conduct the appropriate First Amendment analysis. *See Central Hudson*, 447 U.S. at 566, 100 S.Ct. 2343.

[¶ 18] Because we remand for further analysis, we need not, and do not, reach the issue of whether, independent of First Amendment considerations, the record supports the decision not to modify the 1997 order.

The entry is:

Commission's order vacated and remanded for further proceedings consistent with this opinion.