MCRISC #130-19     12/20/18     MW

STATE OF MAINE                                  SUPERIOR COURT
CUMBERLAND, ss                                    CIVIL ACTION
                                              DOCKET NO. CV-16-366


PHU LE, et al.,

              Plaintiffs

v.                                                    ORDER


AVERILL CONSTRUCTION LLC a/k/a
JEFF AVERILL, et al.,

              Defendants

STATE OF MAINE
Cumberland ss Clerk's Office
DEC 21 2018 8:18AM
RECEIVED

Before the court are plaintiffs' request for reconsideration pursuant to Rule 59 – essentially a motion to amend the judgment under Rule 59(e) – plaintiffs' bill of costs, and plaintiffs' application for attorney's fees.


Rule 59(e) motion

Plaintiffs' Rule 59(e) motion is denied: (1) Although the court noted that the amount overpaid "may" have been higher, the overpayment found by a preponderance of the evidence was $13,500. (2) To the extent that plaintiffs' motion for reconsideration relies on Plaintiffs' Ex. 38, that document is hearsay and was not admitted at trial. (3) To the extent that plaintiffs are now asserting a claim for breach of warranty, no such claim is contained in their complaint and would in any event be subsumed by their claim for poor workmanship, which the court addressed. (4) In all other respects the court adheres to the analysis and rulings in its order dated September 11, 2018 and entered on the docket the following day.


**Plaintiffs–Thaddeus Day Esq.**
**Defendants–Jeffrey Bennett Esq.**

Bill of Costs

Plaintiffs were prevailing parties on one of their claims and are entitled to recover the filing fee ($150.00) and service costs. 14 M.R.S. § 1502-B(1), (2). The service costs reflected in the court file total $52.30. Plaintiffs are also seeking service costs for their writ of attachment but have not submitted any documentation to substantiate that cost.

Plaintiffs' attorney is entitled to travel costs in the amount of $48.75. 14 M.R.S. § 1502-B(4).

With respect to plaintiffs' request for the fees and expenses incurred for their expert witness pursuant to 14 M.R.S. § 1502-C(1), the request is disallowed. Although the court credited Douglas Hall's testimony as to the deficiencies in workmanship he observed, that testimony did not have to come from an expert. It could have come from any competent observer. The court did not find Hall's repair estimate to be credible and excluded a significant amount of Hall's testimony because it had not been properly designated and because it had not otherwise been disclosed to defendants prior to trial.[1]

Finally, although the quality of plaintiffs' photographs was poor, the court did rely on those in evaluating the evidence, and plaintiffs are entitled to $49.63 for visual aids. 14 M.R.S. § 1502-C(3).

Attorney's Fees

Plaintiffs' application for attorney's fees is denied. Plaintiffs originally filed an application for attorney's fees in the form of a July 19, 2018 affidavit from counsel that stated, "To date, the total attorney and legal support staff fees incurred by plaintiffs to prepare for and execute the trial from the time of filing complaint are $18,433." That affidavit did not specify in any way how many hours had been spent or contain any breakdown of the work that had been

---

[1] The court allowed only the testimony previously disclosed to defendants in Hall's report attached to plaintiffs' motion for attachment. Plaintiffs are also seeking travel expenses for Andy Walsh but as far as the court can recall, Walsh did not testify at trial, either as an expert or otherwise.

performed and for which fees were sought. It did state that the bills would be made available in camera.

At the time that affidavit was filed, the court had not ruled on the merits of the case. The court's September 11, 2018 order ruled in favor of plaintiffs on their Unfair Trade Practice Act claim but granted judgment for defendants on all the other claims on plaintiffs' complaint. In light of the court's ruling, and because defendants had not responded to plaintiffs' attorney's fee claim, the court instructed plaintiffs to resubmit their fee application with specific instructions to address the inadequacy of their previous submission. September 11, 2018 order ¶¶ 32-35.

Plaintiffs have not followed those instructions. They are now seeking fees of $ 18,549.75 (an unexplained increase of $116.75) and assert that this was all "for the UFTPA violation." In all other respects their subsequent submission is essentially identical to their previous submission, which was filed before the court decided against plaintiffs on many of their claims.

The Law Court has stated that a party seeking an attorney's fee award has "the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Poussard v. Commercial Credit Plan, Inc.,* 479 A.2d 881, 886 (Me. 1984) (emphasis added), quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

From plaintiffs' submission the court has no way of determining (1) how much of the amount sought is in fact attributable to the Unfair Trade Practice claim on which plaintiffs prevailed, (2) whether some of the time spent was in pursuit of unsuccessful claims or arguments, and (3) whether the fee request is reasonable. Plaintiffs have not documented the number of attorney hours for which fees are claimed as required by *Poussard,* and they have not included a breakdown of those hours itemizing the work performed. *See, e.g., Advanced Construction v. Pilecki,* 2006 ME 84 ¶¶ 26-27, 901 A.2d 189. This is the bare minimum that

3

would allow the court to determine the amount of fees to be awarded and to allow an opposing party to raise objections.

Because opposing parties have a right to object, plaintiffs' contention that billing records can only be submitted in camera is unavailing. The court had already informed plaintiffs that information as to the hours spent on tasks for which fees are sought, such as the number of hours spent researching a given issue, would not be privileged. See September 11, 2018 order ¶ 34.

The entry shall be:

1. Plaintiffs' motion pursuant to Rule 59(e) is denied.

2. Plaintiffs are awarded costs in the amount of $300.68.

3. Plaintiffs' application for attorney's fees is denied.

4. The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: December 20 , 2018

Thomas D. Warren
Justice, Superior Court

Entered on the Docket: 12/21/18 mc

4

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-16-366

PHU LE and TUANH
NGUYEN,

     Plaintiffs

v.

    ORDER

AVERILL CONSTRUCTION
LLC, a/k/a JEFF AVERILL,
and JEFF AVERILL, a/k/a
JJ AVERILL CONSTRUCTION,

     Defendants

REC'D CUMB CLERK'S OF
APR 5 '18 PM 1:51

Before the court is plaintiffs' motion to quash a subpoena served on March 23, 2018. For the following reasons, the motion is granted.

Background

The complaint was filed on September 21, 2016. Defendants were served on September 26, 2016. A response was filed on November 4, 2016. Pursuant to the scheduling order, the discovery deadline was September 6, 2017. Defendants were sanctioned on August 10, 2017 because they failed to respond to discovery requests. Plaintiffs' ex-parte motion for attachment was granted on August 24, 2017.

Defendants' attorney entered his appearance on October 20, 2017. His request to continue the trial from the November-December trial list was granted on November 11, 2017. No motion to extend the discovery deadline was filed.

Defendants' exhibit lists were filed on February 23, 2018 and March 5, 2018. The listed exhibits include all documents exchanged in discovery; all documents attached to the pleadings;

1

all contract documents between the parties; all documents identified on plaintiffs' exhibit list; codes, ordinances, receipts, photographs, and invoices; and occupancy permits.

A trial management conference was held on March 15, 2018. The attorneys agreed and the court ordered that discovery was complete. The court ordered that defendants were precluded from offering evidence that was the subject of unanswered discovery requests. Defendants' attorney's intention to subpoena the Town of Falmouth's witness and his entire file was noted in the order. Plaintiffs' attorney did not object to that intended action. Defendants' attorney did not inform plaintiffs' attorney or the court that he intended to serve a subpoena duces tecum on plaintiffs. In the trial management conference order, trial was scheduled for April 9, 2018. No party objected to the trial management order. (Order filed Mar. 16, 2018.)

Plaintiffs' attorney accepted service of defendants' subpoena on March 31, 2018, which commanded plaintiffs to produce for inspection and copying by April 2, 2018 the following: all documents and records associated with the construction project at 80 Route One, Falmouth, Maine, the subject of the lawsuit, including but not limited to, all contracts, agreements, estimates, receipts, photographs, recordings, charts, graphs, checks, cancelled checks, statement, and any and all documents pertaining to the project. (Ex. A attached to Subpoena dated March 23, 2018.)

Discussion

"There is a relationship between Rule 26 and rule 45." Williamson v. Horizon Lines LLC, 248 F.R.D. 79, 83 (D. Me. 2008) (discussing Fed. R. Civ. P. 26 & 45). The use of subpoenas constitutes discovery and is governed by time deadlines in scheduling orders. See id.; see also Mortg. Info. Servs. v. Kitchens, 210 F.R.D. 562, 566-67 (W.D.N.C. 2002) (discovery of documents from a party is not accomplished pursuant to rule 45); Alper v. United States, 190 F.R.D. 281, 283 (D. Mass. 2000) (same).

2

The entry is

Plaintiffs' Motion to Quash Subpoena is GRANTED.

Date: April 5, 2018

Nancy Mills
Justice, Superior Court

CUMSC-CV-16-366

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-16-366

PHU LE, et al.,

　　　　Plaintiffs

v.

ORDER

AVERILL CONSTRUCTION LLC a/k/a
JEFF AVERILL, et al.,

　　　　Defendants

STATE OF MAINE
Cumberland ss Clerk's Office

DEC 21 2018 8:18AM

RECEIVED

Before the court are plaintiffs' request for reconsideration pursuant to Rule 59 – essentially a motion to amend the judgment under Rule 59(e) – plaintiffs' bill of costs, and plaintiffs' application for attorney's fees.

Rule 59(e) motion

Plaintiffs' Rule 59(e) motion is denied: (1) Although the court noted that the amount overpaid "may" have been higher, the overpayment found by a preponderance of the evidence was $13,500. (2) To the extent that plaintiffs' motion for reconsideration relies on Plaintiffs' Ex. 38, that document is hearsay and was not admitted at trial. (3) To the extent that plaintiffs are now asserting a claim for breach of warranty, no such claim is contained in their complaint and would in any event be subsumed by their claim for poor workmanship, which the court addressed. (4) In all other respects the court adheres to the analysis and rulings in its order dated September 11, 2018 and entered on the docket the following day.

Plaintiffs-Thaddeus Day Esq.
Defendants-Jeffrey Bennett Esq.

Bill of Costs

Plaintiffs were prevailing parties on one of their claims and are entitled to recover the filing fee ($150.00) and service costs. 14 M.R.S. § 1502-B(1), (2). The service costs reflected in the court file total $52.30. Plaintiffs are also seeking service costs for their writ of attachment but have not submitted any documentation to substantiate that cost.

Plaintiffs' attorney is entitled to travel costs in the amount of $48.75. 14 M.R.S. § 1502-B(4).

With respect to plaintiffs' request for the fees and expenses incurred for their expert witness pursuant to 14 M.R.S. § 1502-C(1), the request is disallowed. Although the court credited Douglas Hall's testimony as to the deficiencies in workmanship he observed, that testimony did not have to come from an expert. It could have come from any competent observer. The court did not find Hall's repair estimate to be credible and excluded a significant amount of Hall's testimony because it had not been properly designated and because it had not otherwise been disclosed to defendants prior to trial.[1]

Finally, although the quality of plaintiffs' photographs was poor, the court did rely on those in evaluating the evidence, and plaintiffs are entitled to $49.63 for visual aids. 14 M.R.S. § 1502-C(3).

Attorney's Fees

Plaintiffs' application for attorney's fees is denied. Plaintiffs originally filed an application for attorney's fees in the form of a July 19, 2018 affidavit from counsel that stated, "To date, the total attorney and legal support staff fees incurred by plaintiffs to prepare for and execute the trial from the time of filing complaint are $18,433." That affidavit did not specify in any way how many hours had been spent or contain any breakdown of the work that had been

---

[1] The court allowed only the testimony previously disclosed to defendants in Hall's report attached to plaintiffs' motion for attachment. Plaintiffs are also seeking travel expenses for Andy Walsh but as far as the court can recall, Walsh did not testify at trial, either as an expert or otherwise.

performed and for which fees were sought. It did state that the bills would be made available in camera.

At the time that affidavit was filed, the court had not ruled on the merits of the case. The court's September 11, 2018 order ruled in favor of plaintiffs on their Unfair Trade Practice Act claim but granted judgment for defendants on all the other claims on plaintiffs' complaint. In light of the court's ruling, and because defendants had not responded to plaintiffs' attorney's fee claim, the court instructed plaintiffs to resubmit their fee application with specific instructions to address the inadequacy of their previous submission. September 11, 2018 order ¶¶ 32-35.

Plaintiffs have not followed those instructions. They are now seeking fees of $ 18,549.75 (an unexplained increase of $116.75) and assert that this was all "for the UFTPA violation." In all other respects their subsequent submission is essentially identical to their previous submission, which was filed before the court decided against plaintiffs on many of their claims.

The Law Court has stated that a party seeking an attorney's fee award has "the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Poussard v. Commercial Credit Plan, Inc.,* 479 A.2d 881, 886 (Me. 1984) (emphasis added), quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

From plaintiffs' submission the court has no way of determining (1) how much of the amount sought is in fact attributable to the Unfair Trade Practice claim on which plaintiffs prevailed, (2) whether some of the time spent was in pursuit of unsuccessful claims or arguments, and (3) whether the fee request is reasonable. Plaintiffs have not documented the number of attorney hours for which fees are claimed as required by *Poussard,* and they have not included a breakdown of those hours itemizing the work performed. *See, e.g., Advanced Construction v. Pilecki,* 2006 ME 84 ¶¶ 26-27, 901 A.2d 189. This is the bare minimum that

3

would allow the court to determine the amount of fees to be awarded and to allow an opposing party to raise objections.

Because opposing parties have a right to object, plaintiffs' contention that billing records can only be submitted in camera is unavailing. The court had already informed plaintiffs that information as to the hours spent on tasks for which fees are sought, such as the number of hours spent researching a given issue, would not be privileged. See September 11, 2018 order ¶ 34.

The entry shall be:

1. Plaintiffs' motion pursuant to Rule 59(e) is denied.

2. Plaintiffs are awarded costs in the amount of $300.68.

3. Plaintiffs' application for attorney's fees is denied.

4. The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: December __20__, 2018

Thomas D. Warren
Justice, Superior Court

Entered on the Docket: 12/21/18

4

STATE OF MAINE                                      SUPERIOR COURT
CUMBERLAND, ss                                       CIVIL ACTION
                                                DOCKET NO. CV-16-366


PHU LE, et al.,

         Plaintiffs

v.                                                   ORDER

STATE OF MAINE
Cumberland ss Clerk's Office

SEP 11 2018 /:03PM

RECEIVED

AVERILL CONSTRUCTION LLC a/k/a
JEFF AVERILL, et al.,

         Defendants

A jury-waived trial in the above-captioned case was conducted on June 18-20 and 28, 2018, and the parties subsequently filed post-trial memoranda of law. The trial involved only three days of testimony (June 19, 20, and 28) because there were only two Vietnamese interpreters available on June 18.

Plaintiffs Phu Le and Tuanh Nguyen have sued defendants Averill Construction LLC a/k/a Jeff Averill and Jeff Averill a/k/a J. J. Averill Construction for breach of contract, intentional infliction of emotional distress, conversion, negligence, violation of the Unfair Trade Practices Act, and fraud. All of plaintiffs' claims arise out of Averill's construction of an addition to an existing residence owned by plaintiffs in Falmouth.

At the conclusion of plaintiffs' case the court granted Averill's motion to dismiss plaintiffs' claim for conversion.

The court makes the following findings of fact and conclusions of law:

1. Plaintiffs and defendant Jeff Averill entered into a contract in July 2014 for the construction of an addition to an existing residence at 80 U.S. Route One in Falmouth. Plaintiffs had been living in Portland but planned to move to Falmouth once the addition was completed.

Plaintiffs-Thaddeus V Day, Esq.
Defendants-Jeffrey Bennett, Esq.

2. The contract in this case was between plaintiffs and Jeff Averill in his individual capacity. The only contractual documents in this case signed by either plaintiff were two documents signed by Phu Le (Pl. Ex. 9 and 31). The contractor was designated as "J J Averill," not Averill Construction LLC. These documents were signed by Jeff Averill and included a notation stating "checks payable to J J Averill." Eighty thousand in cash was paid to Jeff Averill, and the first checks totaling $ 30,000 were made payable to Jeff Averill or "J J Averill" and were endorsed by Jeff Averill. Subsequent checks were made payable to "Averill Construction" or "J J Averill Construction" or "Jeff Averill Construction" because Averill requested payment in that manner. However, plaintiffs dealt with Averill in his individual capacity and not with Averill Construction LLC.

3. At the outset, the court did not find Averill's testimony to be credible in many respects. In particular, the court does not credit Averill's testimony that he doctored a survey submitted to the Town of Falmouth (Pl. Ex. 37) because he was instructed to do so by Phu Le. Instead the court finds that it was Averill who decided to add a false surveyor's stamp to the document and who submitted it to the Town – which spotted the forgery and rejected the survey.

4. The court does not credit Averill's testimony that Phu Le assumed the role of general contractor on the project shortly after it commenced. Averill was the general contractor as long as he worked on the project. The subcontractors on the job worked for Averill, not Phu Le.

5. The court does not credit Averill's testimony that Phu Le removed pages from Pl. Ex. 31.

6. The evidence also demonstrated that, shortly before the complaint in this action was filed, Averill placed a spurious mechanic's lien for $66,000 on plaintiffs' residence. Averill contended at trial that he did think plaintiffs owed him money although he testified that he thought he was owed $20,000 rather than the $66,000 set forth in his lien. However, he essentially acknowledged he had really filed the lien because he was angry, and the court does not credit his testimony that he thought plaintiffs owed him any money.

2

7. Most of the contract documents in this case, including the only two documents signed by Phu Le, are barely contracts at all but are really summary punch lists, records of payments and amounts due, and signatures by Averill acknowledging payments.

8. Averill violated the Home Construction Contract statute in numerous ways, including but not limited to the following:

(a) the original contract document dated July 21, 2014, such as it was, specified a total contract price of $147,000 (Pl. Ex. 31) but did not include estimated start and completion dates, did not include the required warranty, did not include the required dispute resolution clause, did not include the required language with respect to change orders, and did not include the required consumer protection information. *See* 10 M.R.S. §§ 1487(3), (7), (8), (9), (12), (13).

(b) The sloppiness of the contract documents in this case is demonstrated by the fact that Pl. Ex. 31 bears a typewritten contract price of $147,000 crossed out with $140,000 handwritten in. However, subsequent contractual documents submitted by Averill appear to incorporate the $147,000 figure, although in some cases that figure has mysteriously been changed to $147,500. *See* Pl. Ex. 11-12.

(c) Averill obtained Phu Le's signature on one additional contractual document (Pl. Ex. 9, dated December 10, 2014) which essentially constituted a change order. Among other things, the changes increased the total square footage of the addition, added 1 ½ bathrooms beyond the two original bathrooms in Pl. Ex. 31, and included radiant heat in the concrete floor for a new contract price of $168,000.

(d) Averill also presented Phu Le and Tuanh Nguyen with at least four additional documents that can be construed as either purported change orders or additional contracts (Pl. Ex. 10-13, dated January 5, 2015, March 4, 2015, September 10, 2015, and October 20, 2015). In violation of 10 M.R.S. §§ 1487 and 1488, none of those documents were signed by plaintiffs.

(e) Pl. Ex. 13, dated October 20, 2015, purports to be a new contract for an additional price of $36,000. It was never signed by plaintiffs. With that document Averill did include the Attorney General's Model Home Construction Contract (partially filled out). However, this was only after Averill had been advised by counsel for plaintiffs that the previous contract documents violated the Home Construction Contract statute. *See* Pl. Ex. 30.

3

9. Although their contract with Averill, as amended by Pl. Ex. 9, called for a total contract price of $168,000, the evidence demonstrates that plaintiffs paid Averill at least $181,500 ($80,000 in cash and $101,500 in checks per Pl. Ex. 2) and perhaps somewhat more.[1]

10. Plaintiffs also may have incurred some additional expense by directly purchasing construction materials for Averill's use. However, the court ruled at trial that any recovery for materials purchased by plaintiffs was excluded because that claim had not been asserted in the complaint. In addition, the trial evidence indicated that some of the construction materials which plaintiffs contended they had purchased for Averill's use involved items that were not part of Averill's contract (e.g., driveway sealer).

11. Based on the testimony of Phu Le and Douglas Hall and the photographs entered in evidence, the court finds that there were also significant instances in which Averill's work was not performed in a reasonably skillful and workmanlike manner. This violated the implied warranty that accompanies every construction contract, *see, e.g., Gosselin v. Better Homes Inc.,* 256 A.2d 629, 639-40 (Me. 1969), and the warranty that Averill was required to include under 10 M.R.S § 1487(7). Although Averill points out that a certificate of occupancy was issued, the issuance of such a certificate does not preclude a finding as to deficiencies in workmanship.

12. Specifically, plaintiffs proved among other things that one or more of the roof beams were sagging, that there were leaks in the area where the roof of the addition joined the roof of the original structure, that the sheetrock had not been properly finished, that there was a 1" lip in what should have been an even floor between the kitchen and laundry room, and that the flooring in one of the rooms was very uneven. These deficiencies are obvious failures of workmanship not requiring expert testimony.

---

[1] By way of example, Pl. Ex. 11 indicates that as of March 22, 2015 plaintiffs had paid a total of $172,500 and Pl. Ex. 2 includes subsequent checks totaling $14,000, which would suggest that the amount paid may have been $186,500.

4

13. In explaining recordkeeping failures on his part, Averill testified that after his son had died five years prior to the trial (in approximately 2013), he "gave up" and "stopped caring" about recordkeeping. Although he testified that he had kept working, this unfortunate event also appears to have affected his work performance

14. There were, however, significant failures in plaintiffs' proof as to damages. Plaintiffs offered the testimony of Hall, a remodeling contractor who estimated that the finishing and repair work necessary to correct deficiencies in Averill's work would come to $85,500. Although the court credits Hall's testimony as to certain deficiencies in Averill's performance, certain of the other deficiencies Hall referred to were either minor, were purely cosmetic, or may have been attributable to requests made by Phu Le (e.g., the poor location of the kitchen hood). The court does not find Hall's $ 85,500 repair estimate to be credible. Moreover, Hall's estimate included an unspecified amount for work to be performed by one or more other contractors who had not been designated as experts and whose estimates were therefore excluded. There is no evidence in the record on which the court can reasonably determine the actual amount of damages caused by Averill's poor workmanship.

15. Plaintiffs also offered Phu Le's testimony as to what his property is worth but his opinion as to the alleged depreciation in value based on deficient performance by Averill was inadmissible. *Morin Building Products Co. v. Atlantic Design and Construction*, 615 A.2d 239, 241 (Me. 1992).

16. The Town of Falmouth issued a stop work order that lasted from March 30, 2015 to December 9, 2015. This was initially triggered by Averill's duplicity in submitting a doctored survey, which caused the Town to require that Phu Le submit a Class A survey. However, a problem revealed by the Class A survey – a rear setback issue as opposed to the concerns about

5

the front setback that had originally led to the stop work order – was the cause of most of the delay in getting the stop work order lifted.[2]

17. The only evidence plaintiffs offered with respect to losses or expenses they incurred as a result of the stop work order involved the payment of $1200 for administrative costs and a civil fine (Pl. Ex. 51). However, those involved the rear setback.[3] Plaintiffs did not offer evidence that a reasonable contractor would have recognized the rear setback issue and prevented that from becoming a problem. No damages can be assessed against Averill on that issue.

18. The doctored survey is the basis for plaintiffs' claim of fraud. However, that was an attempted (and ultimately unsuccessful) fraud upon the Town. The plaintiffs were not the victims of the attempted fraud. Although the doctored survey certainly has a bearing on Averill's credibility, plaintiffs cannot recover on their fraud claim. *See, e.g., Letellier v. Small,* 400 A.2d 371, 376 (Me. 1979) (justifiable reliance by plaintiff required as an element of fraud).

19. Averill orally assured plaintiffs when they first contracted with him in July 2014 that he expected to finish the job by Christmas, and plaintiffs needed to move in at that time because they had enrolled their children in Falmouth schools. The work was not completed by Christmas 2014 and was not completed when the Town issued a stop work order in March 2015. In fact, after the stop work order was lifted in December 2015, Averill was still working sporadically on the job during the first half of 2016.

20. Nevertheless plaintiffs and their children moved into the residence in December 2014 in order for their children to attend Falmouth schools. Although they were living in the original

---

[2] This did not happen until after proceedings before the Board of Zoning Appeals and the Town Council and the payment of a civil penalty of $750 by plaintiffs.

[3] Plaintiffs also had to pay for a Class A survey, but the only evidence as to the cost of that survey was hearsay.

structure rather than the addition, this meant they were living in a construction site and were exposed to considerable amounts of dust and a few hazardous objects. Nevertheless, they made the decision to move in, and there was no evidence that would support findings that Averill's construction activities – in terms of the amount of discomfort they caused to plaintiffs – were so extreme and outrageous as to exceed all bounds of decency or that the emotional distress experienced by plaintiffs was so extreme that no reasonable person could have been expected to endure it. *See Curtis v. Porter,* 2001 ME 158 ¶ 10, 784 A.2d 18. Averill cannot be found liable on plaintiffs' claim for intentional infliction of emotional distress.

21. As noted by the court during the trial, while there was testimony that plaintiffs' children had asthma that was exacerbated by the dust and incurred some minor injuries in living next to a construction site, plaintiffs did not bring this lawsuit on behalf of their children and therefore cannot recover for injuries to their children.

22. Although there was evidence that the spurious lien placed on plaintiffs' property prevented or delayed plaintiffs from refinancing, the complaint does not include a slander of title claim. Moreover, plaintiffs did not offer any evidence as to financial losses incurred because of Averill's lien.

23. Plaintiffs' claim for damages thus reduces to whether they are entitled to damages under the Unfair Trade Practices Act based on Averill's violations of the Home Construction Contract statute. Violations of the Home Construction Contract statute are prima facie evidence of violations of the Unfair Trade Practices Act (UTPA). 10 M.R.S. § 1449(1). Under the UTPA, persons who suffer losses of money or property by reason of violations of the UTPA may seek actual damages, restitution, and appropriate equitable relief. 5 M.R.S. § 213(1).

24. In this case, for the reasons stated above, plaintiffs have not proven actual damages, but there remains the issue of restitution.

25. The contract documents in this case, such as they were, were glaringly deficient, even though Averill acknowledged that he was aware of the requirements of the Home Construction Contract statute.

26. Among the problems with the job, and a major reason for the delays that were experienced, was that Averill's work on the job can best be described as desultory. Although Averill had originally promised to complete the work by Christmas 2014, he was frequently absent from the job site at times when his presence was needed to keep the work on schedule. With increased urgency after his family had moved into 80 U.S. Route One in December 2014, Phu Le entreated Averill to get busy and finish the work. Averill's typical response was that he needed more money. Because plaintiffs were more than halfway into the work using Averill as the contractor and because they were increasingly desperate to finish, they kept paying above and beyond the $168,000 set forth in Pl. Ex. 9.

27. Although plaintiffs operate a nail salon in South Portland and have previously been involved in at least one construction project, their testimony demonstrated that they did not fully understand contractual documents and rights. This was partly but not entirely due to language issues.[4]

28. The UTPA remedy for restitution allows a consumer "to recover any benefits he has conferred on a person who by reason of a violation [of the UTPA] has caused the consumer to suffer loss of money or property." *Bartner v. Carter,* 405 A.2d 194, 203 (Me. 1979). In this case the court finds by a preponderance of the evidence that plaintiffs' payment to Averill of $ 13,500

---

[4] Ms. Nguyen used a Vietnamese interpreter throughout the proceeding. Mr. Le waived the use of an interpreter for the first two days of evidence but had some difficulty understanding questions and used an interpreter on the final day.

8

more than the $168,000 set forth in Pl. Ex. 9 constituted a loss that was caused "by reason of" Averill's violations of the Home Construction Contract statute. The contract documents provided by Averill did not set forth Averill's contractual obligations and did not include required language with respect to (1) the estimated completion date, (2) the requirement that agreement to change orders had to be evidenced in writing, and (3) the rights and remedies that plaintiffs could invoke in the event of Averill's breaches. Given plaintiffs' only partial understanding of contractual rights and obligations, their desperation to have the work completed once they had moved in, and Averill's insistence that he would only continue working if plaintiffs paid him additional money, the lack of clear and adequate contractual documents meant that plaintiffs did not understand that they were not required to pay more than the amount they had agreed to in Pl. Ex. 9.[5]

29. The work on the addition was also delayed to some degree by a number of changes that were instigated by Phu Le. However, the major cost increases involved in those changes were the subject of the amendment that raised the contract price to $168,000 in Pl. Ex. 9, which was signed in mid-December 2014. Some changes were made thereafter at Phu Le's request. The absence of adequate contractual language specifying that change orders had to be signed by the parties with all increased costs set forth and agreed to – so that plaintiffs knew where they stood – leads the court to conclude that despite any subsequent changes Averill received more than the $168,000 agreed to in Pl. Ex. 9 by reason of violations of the Home Construction Contract statute.

---

[5] Plaintiffs' payments all occurred on or before May 19, 2015 (the date of the final check in Pl. Ex. 2). Subsequently plaintiffs consulted counsel and became aware of their rights, as demonstrated by Pl. Ex. 30, dated August 21, 2015. They would not be entitled to restitution for any payments made after they consulted counsel in the summer of 2015.

9

30. If plaintiffs had received full value for the additional payments they made, plaintiffs would not be entitled to restitution. However, restitution is appropriate here because Averill's workmanship was deficient in many respects and Averill therefore received an unjustified benefit. Indeed, if plaintiffs had offered sufficient proof of the amounts necessary to repair those deficiencies, they would probably have been entitled to additional damages.

31. Along with their post-trial memorandum of law, plaintiffs submitted an attorney's fee request pursuant to 5 M.R.S. § 213(2) along with an affidavit setting forth that plaintiffs' attorney's fees up through the last day of trial (not including preparation of post-trial submissions) came to $ 18,433. Averill has not responded to that submission.

32. Under 5 M.R.S. § 213(2) attorney's fees may be awarded irrespective of the amount in controversy, and plaintiffs' attorneys fees are not necessarily limited by the amount recovered. However, plaintiffs have not made any effort to separate attorney time spent on their UTPA claim from the time spent on their other (unsuccessful) claims. They are obliged to do that to the extent possible. *Beaulieu v. Dorsey,* 562 A.2d 678, 679 (Me. 1989). In some cases fee and non-fee claims may be so intertwined as to make separation impossible. *Advanced Construction Corp. v. Pilecki,* 2006 ME 84 ¶¶ 30-32, 901 A.2d 189.

33. Fees may also be reduced based on a plaintiff's limited degree of success. *Bangs v. Town of Wells,* 2003 ME 129 ¶ 20, 834 A.2d 955.

34. An attorney's fee request should include an affidavit that not only attests to counsel's customary hourly rate but also includes such basic facts as are necessary to allow the court to determine the reasonableness of the fee. *Miele v. Miele,* 2003 ME 113 ¶ 17, 832 A.2d 760. While some of the information contained in billing records (reflecting communications to and from clients) may be privileged, other information (such as number of hours spent researching a given issue) would not be.

10

35. Accordingly, plaintiffs may resubmit an attorney's fee request separating out, to the extent possible, the time spent on non-fee claims and providing as much non-privileged detail as possible. The court is prepared to review billing records *in camera* but only if that is absolutely necessary.

36. Averill shall have 21 days to respond to plaintiffs' resubmittal.

The entry shall be:

1. On plaintiff's claim under the Unfair Trade Practices Act, judgment is entered in favor of plaintiffs and against defendant Jeffrey Averill in the amount of $ 13,500.

2. On all the other claims in the complaint, judgment is entered in favor of defendants and against plaintiffs.

3. Prejudgment interest shall run from the filing of the complaint at 3.65%. Post-judgment interest shall run at 7.76%.

4. Pursuant to 5 M.R.S. § 213(2) and as set forth above, plaintiffs may resubmit an application for attorney's fees within the time limit set forth in M.R.Civ.P. 54(b)(3).

5. The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: September _11_, 2018

Thomas D. Warren
Justice, Superior Court

Entered on the Docket: 9/12/18

MC

11